Citation Nr: 1730441 
Decision Date: 07/31/17 Archive Date: 08/04/17

DOCKET NO. 09-35 801 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUE

Entitlement to compensation benefits pursuant to the provisions of 38 U.S.C.A. 
 § 1151 for the residuals of radiation therapy for rectal cancer, to include a kidney disorder, as well as pain and discomfort, claimed as due to negligence on the part of treating VA medical personnel.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

J. Meyer, Associate Counsel




INTRODUCTION

The Veteran served on active duty from October 1969 to October 1971.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a March 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania.

The Veteran requested a hearing in his September 2009 substantive appeal. He was scheduled for a February 2012 hearing, but failed to appear. He has not asserted good cause for missing the hearing, and the hearing request is considered withdrawn. 38 C.F.R. § 20.702(d) (2016).

This appeal was remanded by the Board in March 2016 for further development. After further development, this appeal is now ready for adjudication. 


FINDINGS OF FACT

1. The Veteran has an additional disability, to include a kidney disorder, due to hospital care, medical or surgical treatment, or examination furnished the Veteran in April-July 1992, or otherwise.

2. The preponderance of the evidence indicates that the Veteran was not properly informed of the risks involved with radiation treatments as it pertains to the potential for kidney complications in April-July 1992.


CONCLUSION OF LAW

The criteria for compensation under 38 U.S.C.A. § 1151 for compensation for an additional disability of a kidney disorder caused by the VA treatment from April to July 1992 have been met. 38 U.S.C.A. §§ 1151, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.361, 17.32 (2016).
REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran seeks compensation benefits for the residuals of radiation treatment for rectal cancer, to include kidney failure, claimed as due to negligence on the part of treating VA medical personnel.

As set forth in 38 U.S.C.A. § 1151, when a Veteran suffers additional disability or death as the result of medical or surgical treatment, disability compensation shall be awarded in the same manner as if such additional disability or death were service-connected. 38 U.S.C.A. § 1151; 38 C.F.R. § 3.361. A disability or death is a qualifying additional disability or qualifying death if the disability or death was not the result of the Veteran's willful misconduct and the medical or surgical treatment furnished the Veteran under any law administered by VA (including the Secretary, either by a Department employee or in a Department facility as defined in 38 U.S.C.A. § 1701 (3)(A) (West 2014)) was both the actual cause and proximate cause of the disability or death. 38 U.S.C.A. § 1151(a).

Here, the objective medical evidence indicates that there is an additional disability (kidney failure) that resulted from VA's medical treatment of the Veteran. 38 C.F.R. § 3.361(c)(1). Specifically, the Veteran had VA examinations in June and September 2014, and the examiners concluded that the Veteran's "chronic kidney disease was as likely as not due to post-radiation hydronephrosis following treatment of his rectal cancer." 

While there is no evidentiary dispute that the treatment caused the additional disability, to establish "proximate cause" under § 3.36(d), there must also be evidence that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing care proximately caused the Veteran's additional disability or death. This may be demonstrated in two ways, by evidence indicating that either (i) VA failed to exercise the degree of care that would be expected of a reasonable health care provider; or (ii) VA furnished the hospital care, medical or surgical treatment, or examination without the Veteran's or, in appropriate cases, the Veteran's representative's informed consent. Id.

For the reasons discussed below, the Board will focus on the issue of informed consent, as the evidence regarding this aspect of the degree of care provided is sufficient to grant the benefit sought. 

Title 38, section 17.32 requires the health care provider having primary responsibility for a patient to explain, inter alia, the "reasonably foreseeable associated risks" of the treatment. To determine whether there was informed consent, VA will consider whether the health care providers substantially complied with the requirements of 38 C.F.R. § 17.32 ("Informed consent and advance care planning"). Under this section, informed consent is "the freely given consent that follows a careful explanation by the practitioner to the patient or the patient's surrogate of the proposed diagnostic or therapeutic procedure or course of treatment." Importantly, "the informed consent process must be appropriately documented in the health record." 38 C.F.R. § 17.32(d)(1). 

Minor deviations from the requirements of § 17.32 that are immaterial under the circumstances of a case will not defeat a finding of informed consent. Consent may be express (i.e., given orally or in writing) or implied under the circumstances specified in § 17.32(b), as in emergency situations when immediate medical care is necessary to preserve life or prevent serious impairment of the health of the patient or others and the patient is unable to consent. 38 C.F.R. § 3.361(b). 

The Veteran asserts that he was not informed of the possibility of kidney failure as a result of his radiation treatment. Consistent with his assertion, the medical evidence of record fails to disclose any documentation that the Veteran was either informed of the risks of kidney failure, or of the Veteran's consent to treatment after being informed of the risk of kidney failure. Specifically, the Veteran signed a radiation treatment consent form in June and July 1993, in which the Veteran consented to complications that did not reference or mention any possible kidney complications. The Board also notes that the Veteran also a consent form in June 1992 for chemotherapy in which the box titled "kidney failure" was not circled as a potential risk. 

Importantly, the Board notes that, the Court of Appeals for Veterans Claims (Court) held that it could not be presumed that a complication was not discussed simply because it was not recorded in a generic consent form. Halcomb v. Shinseki, 23 Vet. App. 234 (2009). However, the Court subsequently held that the presumption of regularity does not apply to the scope of the information provided to a patient by a doctor with regard to the risks involved with any particular treatment. McNair v. Shinseki, 25 Vet. App. 98, 104-05 (2011) (when there is a dispute concerning what information a doctor provided to his patient, a factual issue is raised regarding whether a generic consent form indicating the patient was advised of the risks of surgery was more probative than the Veteran's lay statements that a specific risk of the surgery was not discussed).

In this appeal, however, there is no such generic form of record. In fact both the radiation and chemotherapy consent forms were documents that were specific to bodily areas that were being targeted by the treatment. Moreover, the radiation consent form had a section titled "Other" in which additional complications could be added (in which kidney failure was not a listed complication). Additionally, there is no medical evidence, including opinions from the VA examiners, which indicate that the Veteran was informed, or would likely have been informed, that kidney damage was a possible complication. As such, the Board finds that there is no evidence that the Veteran was informed of the risks involved in the procedure prior to the April-July 1992 treatments.

The Court further explained that the failure to provide information to a patient about a potential adverse effect does not defeat a finding of informed consent if a reasonable person faced with similar circumstances would have proceeded with the treatment. McNair v. Shinseki, 25 Vet. App. 105-07. If a reasonable person faced with similar circumstances would have proceeded with the treatment, then this is a minor, immaterial deviation from the informed consent requirements. Id. at 107; see also 38 C.F.R. § 3.361(d)(1)(ii) (providing that a minor, immaterial deviation from the requirements of 38 C.F.R. § 17.32 will not defeat a finding of informed consent). This reasonableness test was a factual finding that the Board must make in the first instance, in consideration of certain factors. McNair, 25 Vet. App. at 107-08.
The adjudicator must "not only must look to the likelihood of an undisclosed risk materializing, but also recognize that some foreseeable risks might be minor when compared to the foreseeable consequences of continuing without undergoing the treatment." Id.; see also Smith v. Cotter, 107 Nev. 267, 810 P.2d 1204, 1209 (1991) (determining that the plaintiff's thyroid problem was a minor irritant when compared to the risk of permanent vocal cord paralysis) (as cited by the Court in McNair). The Board should also consider the "consequences of proceeding with surgery versus foregoing surgery, which are key factors upon which one might evaluate whether a reasonable person would have proceeded with the surgery." McNair, 25 Vet. App. at 107-08.

Nevertheless, the Board cannot say, without resorting to speculation, that a reasonable person would have necessary continued with the particular course of treatment taken if informed of the potential residual of kidney failure - which could necessitate the permanent surgical implementation of a nephrostomy tube. Initially, there is no indication in the treatment record that proceeding with only surgery and chemotherapy (and without the radiation component) would have materially affected the outcome. In fact, one of the forms provided to the Veteran had numerous different treatment options - which included proceeding without radiation. As such, the Board is not presented with evidence that the Veteran faced a serious health risk if he declined the treatment option provided, including by the way of expert medical opinion. There is also no evidence that the Board can weigh against the potential (and ultimately realized) outcome of kidney failure - especially in light of the Veteran's other treatment options. 

Ultimately, given the lack of any informed consent of record as to the risk of kidney failure, and the Veteran's assertions that he was not properly informed of the risks involved in the procedure, the Board is unable to determine that VA obtained informed consent prior to treating the Veteran. Furthermore, the Board cannot determine that a reasonable person in the Veteran's position would have proceeded with the treatment, opted for different treatment, or opted to forego treatment altogether, if informed of the risks involved. 

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against the claim in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). In resolving all reasonable doubt in the Veteran's favor, compensation benefits for additional disability manifested in a kidney disorder are warranted.

VA Duty to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). In this case, to the extent it is being adjudicated, the Board is granting in full the benefit sought on appeal. Accordingly, assuming, without deciding, that any error was committed with respect to either the duty to notify or the duty to assist, such error was harmless and need not be further considered.


ORDER

Entitlement to compensation benefits under the provisions of 38 U.S.C.A. § 1151 for an additional disability of a kidney disorder caused by the VA treatment in April-July 1992 have been met, is granted, subject to the laws and regulations governing the payment of monetary benefits.




____________________________________________
B.T. KNOPE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs